UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF  NEW YORK

_____

CAROL GOBLE,

                              Plaintiff                 DECISION AND ORDER

-vs-
                                                                  15-CV-6302 CJS

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

_____

APPEARANCES

For the Plaintiff:              William J. McDonald, Jr., Esq.
                                     Bond and McDonald
                                     91 Genesee Street
                                     Geneva, New York 14456

For the Defendant:          Peter W. Jewett, Esq.
                                     Social Security Administration
                                     Office of General Counsel
                                     26 Federal Plaza, Room 3904
                                     New York, New York 10278

                                     Kathryn L. Smith, A.U.S.A.
                                     Office of the United States Attorney
                                     for the Western District of New York
                                     100 State Street
                                     Rochester, New York 14614

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant"),

which denied the application of Carol Goble ("Goble" or "Plaintiff") for Social Security

Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI")

1

benefits.  Now before the Court is Plaintiff's motion (Docket No. [#9]) for judgment on

the pleadings and Defendant's cross-motion [#12] for judgment on the pleadings.

Plaintiff's motion is granted, Defendant's cross-motion is denied and this matter is

remanded for further administrative proceedings.

BACKGROUND

The reader is presumed to be familiar with the Parties' submissions, which

contain detailed recitations of the pertinent facts.  The Court has reviewed the entire

administrative record and will offer only a brief summary of the facts contained therein.[1]

With regard to the medical evidence, the Court observes only that while the

record is quite lengthy (664 pages), it contains relatively little information about Goble's

lower-back pain, which she apparently maintains is her most-disabling condition.

On January 9, 2014, an Administrative Law Judge ("ALJ") issued a decision

finding that Goble is not disabled. (10-24).  Goble appealed, but on April 22, 2015, the

Appeals Council declined to review the ALJ's determination. (1-6).  Consequently, the

ALJ's determination became the Commissioner's final decision.

In that regard, the ALJ applied the required five-step sequential analysis, *see*, 20

C.F.R. §§ 404.1520(a)(4)(i)-(v) (SSDI) & 416.920(a)(4)(i)-(v) (SSI).  At steps one and

two, respectively, the ALJ found that Goble had not engaged in substantial gainful

activity ("SGA") since March 1, 2010, and that she had the following serious

---

[1] *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) ("To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.") (citation omitted). Of course, in discussing the entire record, the Court "keep[s] in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record."  *Clark v. Commissioner of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998).

impairments: bilateral flat feet; right ankle tendonitis; degenerative disc disease of the

lumbar spine; degenerative joint disease of the right shoulder, status post-arthroscopy;

left shoulder rotator cuff syndrome; non-displaced fracture of the right fibula; obesity;

diabetes; depression; and anxiety. (12).   At step three, the ALJ found that none of

Goble's serious impairments met or medically equaled any impairment listed in 20 CFR

Part 404, Subpart P, Appendix 1. (13-14).   Prior to reaching step four of the sequential

analysis, the ALJ found that Goble had the following residual functional capacity

("RFC"):

> [She can] perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except [that she] cannot climb ladders, ropes or scaffolds, can
> occasionally climb ramps/stairs, balance, stoop, bend, crouch or crawl;
> can occasionally reach overhead; must avoid concentrated exposure to
> extreme heat and excessive vibration; must avoid slippery and uneven
> surfaces, hazardous machinery and unprotected heights; work is limited to
> simple, routine and repetitive tasks, involving only simple, work-related
> decisions, with few, if any, work-place changes; is limited to only
> occasional interaction with coworkers and supervisors and no regular
> interaction with the general public.

(14).   At step four of the analysis, the ALJ found that Goble cannot perform her past

relevant work. (22-23).   However, at step five of the sequential analysis the ALJ found,

based on the testimony of a vocational expert ("VE"), that Goble can perform other

work, including the following jobs: mail room clerk (DOT 209.687-026), routing clerk

(DOT 222.687-022) and small products assembler (DOT 076.684-022). (24).

In making the aforementioned RFC determination the ALJ considered two

medical opinions: The opinion of Kalyani Ganesh, M.D. ("Ganesh"), a consultative

internist who examined Goble at the Commissioner's request, and the opinion of David

Blasczak, M.D. ("Blasczak"), Goble's long-time treating physician.[2]  In pertinent part,

Ganesh opined that Goble has the following limitations: "No limitations with sitting,

standing, or use of upper extremities.  Mild-to-moderate limitations with walking and

climbing." (471).  The ALJ found that Ganesh's opinion was "largely consistent with the

overall record, which does not support the severity of the limitations [alleged] by the

claimant." (20).  However, the ALJ further found that Goble has "additional restrictions

that were not contemplated by Dr. Ganesh," and therefore he purportedly gave

Ganesh's opinion only "limited weight." (20).  As for Blasczak's opinion, the ALJ noted

that according to Blasczak, Goble is "limited to less than the full range of sedentary

exertional work, would be unable to perform any postural movements, [would] be

absent from work for 30 to 31 days per month, . . .could only stand for 15 minutes at a

time, walk for 50 feet, and sit for 30 minutes," and would have "significant concentration

difficulties due to pain symptoms." (21).  However, the ALJ found that Blasczak's

opinion was entitled to only "limited weight," since it was "overly severe when contrasted

with the totality of the medical evidence, and inconsistent with the evidence, including

[Blasczak's] own progress notes[.]" (21).

    Also as part of his RFC determination, the ALJ found that Goble's statements

concerning the "intensity, persistence and limiting effects of [her] symptoms [were] not

---

[2]The  ALJ also discussed a report from Carrie Coulson, SDM ("Single Decision Maker"), a
disability analyst for the State of New York.  However, non-physician "single decision makers" such as
Coulson are not acceptable medical sources and consequently their opinions are generally not afforded
any weight.  *See, Lozama v. Colvin*, No. 1:13-CV-0020(GTS), 2016 WL 1259411, at *5 (N.D.N.Y. Mar. 30,
2016) (Indicating that SDMs are not "acceptable medical sources under the regulations" and that the SSA
has advised ALJs not to afford any weight to their opinions at the administrative hearing level.).

entirely credible." (16).  In making that finding, the ALJ reviewed the medical evidence and opined that while Goble has a variety of documented ailments, they should not prevent her from working at the level described in his RFC finding.  For example, the ALJ stated that while Goble has "some positive findings of lumbar degeneration, these are mild in nature, and there is no significant evidence of any considerable protrusions or herniation, nor is there any evidence of any stenosis in the lumbar spine." (21).  Similarly, with regard to non-exertional limitations the ALJ stated that "[w]hile the psychological evaluation did suggest some problems with impaired memory and concentration, the claimant has also shown improvement in her mental condition, with her anxiety well controlled with the use of medication, and her depression apparently more managed with psychological therapy and medication management." (22).  Further as to credibility, the ALJ found that Goble's activities of daily living were inconsistent with her claim of disability.  In that regard, the ALJ mentioned that after Plaintiff was laid off from her last job in 2009, she attended classes to obtain a nursing degree, that she was attempting to obtain the return of her children from Child Protective Services ("CPS"), and that she had been "taking care of a friend [who was] suffering from colitis." (22).

On May 18, 2015, Plaintiff commenced this action.  In her motion for judgment on the pleadings, Goble contends that the Commissioner's decision must be reversed for the following reasons: 1) the ALJ did not follow the "treating physician rule"; 2) the ALJ essentially relied on his own medical judgment in determining the RFC; 3) the ALJ did not properly assess credibility; and 4) the ALJ improperly determined that she can perform other jobs.

The Commissioner opposes Goble's motion, and has cross-moved for judgment on the pleadings.

DISCUSSION

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."  The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Walker v. Bowen*, 660 F.Supp. 360, 362 (S.D.N.Y. 1987) ("The Secretary's findings of fact are binding on this Court so long as the claimant receives a fair hearing, no error of law is committed, and the findings are supported by 'substantial evidence' in the administrative record.") (Weinfeld, J.).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*, 134 F.3d at 501.

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

*The Treating Physician[3] Rule*

Regarding Goble's argument concerning the treating physician rule, the Second

Circuit has provided a concise summary of the applicable law:

> The SSA recognizes a rule of deference to the medical views of a
> physician who is engaged in the primary treatment of a claimant. Thus,
> "the opinion of a claimant's treating physician as to the nature and severity
> of the impairment is given 'controlling weight' so long as it 'is
> well-supported by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other substantial evidence in
> [the] case record.' [*Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)]
> (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances
> when it is appropriate for an ALJ not to give controlling weight to a treating
> physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d
> Cir.2004) (per curiam) (holding that "the opinion of the treating physician
> is not afforded controlling weight where, as here, the treating physician
> issued opinions that are not consistent with other substantial evidence in
> the record, such as the opinions of other medical experts"). Nevertheless,
> even when a treating physician's opinion is not given controlling weight,
> SSA regulations require the ALJ to consider several factors in determining
> how much weight the opinion should receive. *See* 20 C.F.R. §
> 404.1527(c)(2)(i), (2)(ii), (3)–(6). "[T]o override the opinion of the treating
> physician, we have held that the ALJ must explicitly consider, *inter alia*: (1)
> the frequen[c]y, length, nature, and extent of treatment; (2) the amount of
> medical evidence supporting the opinion; (3) the consistency of the
> opinion with the remaining medical evidence; and, (4) whether the
> physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d
> Cir.2013) (per curiam). "After considering the above factors, the ALJ must
> 'comprehensively set forth [his] reasons for the weight assigned to a
> treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (alteration in
> original) (*quoting Halloran*, 362 F.3d at 33). The failure to provide "'good
> reasons' for not crediting the opinion of a claimant's treating physician is a

---

[3]A treating physician is a "physician, psychologist, or other acceptable medical source," who provides "medical treatment or evaluation" to a claimant as part of an "ongoing treatment relationship." 20 C.F.R. § § 404.1502 & 416.902.  A "nontreating source" is a "physician, psychologist, or other acceptable medical source" who has examined the claimant, but not as part of an ongoing treatment relationship. *Id*.

ground for remand." *Id*. at 129–30 (*quoting Snell [v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)]. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131.

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  An ALJ is not required to "slavishly" recite and discuss each factor contained in 20 C.F.R. § 404.1527(c), provided that "the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 Fed. Appx. 67, 70, 2013 WL 628072 at *2 (2d Cir. Feb. 21, 2013).

Goble contends that the ALJ failed to follow this rule, because he did not provide "good reasons" for failing to give controlling weight to Blasczak's opinion, which, if accepted, establishes that she cannot work.  On this point, Goble indicates that Blasczak, who has been her treating physician for over twenty years, opines that during an eight-hour workday, she can only sit for two hours, stand for one hour, and walk for thirty minutes; she cannot lift and carry ten pounds; and she has constant pain that prevents her from concentrating.  Goble maintains that while the ALJ claimed that Blasczak's opinion was inconsistent with the other medical evidence including his own notes, such a statement is insufficient because the ALJ "must specifically identify [the alleged] inconsistent evidence" and explain why it conflicts with Blasczak's opinion.[4] Furthermore, Goble contends that Blasczak's opinion is actually consistent with the medical record, which contains many "positive medical findings."[5]

---

[4]Pl. Memo of Law [#9-1] at p. 14.

[5]Pl. Memo of Law [#9-1] at pp. 14-17.

The Commissioner responds that "[t]he reasons provided by the ALJ for giving little weight to Dr. Blasczak's opinion are legally proper and supported by substantial evidence."[6]  For example, the Commissioner contends that it was proper to give little weight to Blasczak's opinion because it was set forth in a "check the box" format.  The Commissioner also cites a number of ways in which she believes that Blasczak's opinion was inconsistent with his office notes.  Further, although the Commissioner maintains that the ALJ's decision identified specific portions of the medical record that conflict with Blasczak's opinion, it did not do so in the paragraph in which the ALJ specifically discussed the weight that he gave to Blasczak's opinion.  Additionally, the Commissioner contends that the ALJ properly gave little weight to Blasczak's opinion about Goble's alleged non-exertional limitations, since he "is not a specialist in mental health."[7]

The Court agrees with Goble that the ALJ failed to follow the treating physician rule.  At the outset, while the Commissioner has cited a number of specific instances in which she believes that Blasczak's opinion conflicts with his office notes and other medical records, and while she maintains that Blasczak is not a specialist in mental health, those are not reasons that the ALJ gave in his decision for affording little weight to Blasczak's opinion.  Accordingly, the Court may not rely on those *post hoc* arguments when considering whether the ALJ complied with the treating physician rule. *See, Snell v. Apfel*, 177 F.3d at 134 ("A reviewing court may not accept appellate

---

[6]Def. Memo of Law [#12-1] at p. 21.

[7]Def. Memo of Law [#12-1] at p. 24.

counsel's *post hoc* rationalizations for agency action.") (citation omitted).

Nevertheless, the Commissioner contends that the ALJ identified specific instances in which Blasczak's opinion was inconsistent with the medical evidence of record, even though he did not do so in the same paragraph in which he discussed the weight that he was giving Blasczak's opinion.  For example, the Commissioner states that the ALJ observed that Goble's "*pain had improved*."[8]  Such statement apparently refers either to Goble's right shoulder pain, which improved following surgery, or her lower back pain, which improved somewhat when she used a Transcutaneous Electrical Nerve Stimulation ("TENS") device.   However, to the extent that the Commissioner is arguing that Goble's improvement in her right shoulder pain provided substantial evidence for the ALJ to disregard Blasczak's entire treating opinion, the Court disagrees.  In that regard, after Goble's right shoulder improved her left shoulder pain worsened, and in any event Blasczak did not indicate that his opinion was based on specifically on shoulder pain; instead, he said that his opinion was based on a diagnosis of "chronic back [and] joint pain." (652).  Similarly, to the extent that the Commissioner maintains that an improvement in Goble's back pain following her use of the TENS unit provided substantial evidence for the ALJ to grant little weight to Blasczak's opinion, the Court also disagrees.  On this point, Blasczak's note dated November 6, 2012, merely states, "lower back better with TENS." (512).  Blasczak did not indicate that the TENS treatment completely resolved Goble's pain, and indeed, the remainder of that same office note indicates that Blasczak advised Goble to continue

_____

[8]Def. Memo of Law [#12-1] at p. 23 (emphasis added).

using prescription pain medication (Tramadol, three times per day), physical therapy

(three times per week), heat, massage and TENS for her persistent back pain. (512).

The Commissioner also suggests that the ALJ was justified in giving Blasczak's

opinion little weight because it indicated that Goble is unable to work, which is an issue

reserved for the Commissioner.[9]   Specifically, Blasczak stated, as part of his overall

opinion, that Goble "[c]annot work any productive job." (652).  However, even where a

treating source expresses an opinion on an issue reserved to the Commissioner, such

as whether a claimant is "disabled," the ALJ cannot simply ignore or disregard the

treating source's opinion. In that regard, the Commissioner has stated as follows, in

pertinent part:

> [O]ur rules provide that adjudicators must always carefully consider
> medical source opinions about any issue, including opinions about issues
> that are reserved to the Commissioner. For treating sources, the rules
> also require that we make every reasonable effort to recontact such
> sources for clarification when they provide opinions on issues reserved to
> the Commissioner and the bases for such opinions are not clear to us.  .  .
> .  [T]reating source opinions on issues that are reserved to the
> Commissioner are never entitled to controlling weight or special
> significance.
>
> ***
>
> However, opinions from any medical source on issues reserved to the
> Commissioner must never be ignored. The adjudicator is required to
> evaluate all evidence in the case record that may have a bearing on the
> determination or decision of disability, including opinions from medical
> sources about issues reserved to the Commissioner. If the case record
> contains an opinion from a medical source on an issue reserved to the
> Commissioner, the adjudicator must evaluate all the evidence in the case

---

[9] *See*, Def. Memo of Law [#12-1] at p. 21 ("The ALJ first explained that Dr. Blasczak opined
Plaintiff was disabled, which is an issue reserved to the Commissioner.  The ALJ then went on to provide
*further* reasons for giving the opinion little weight.") (emphasis added, citations omitted).

comment

record to determine the extent to which the opinion is supported by the record.

***

[For example,] [m]edical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. . . . Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

Titles II & Xvi: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5P (S.S.A. July 2, 1996).  Accordingly, to the extent that the ALJ gave little weight to Blasczak's opinion simply because it contained an opinion that Goble cannot work, without further evaluation, the ALJ erred.

The Commissioner also argues that the ALJ was justified in giving Blasczak's opinion little weight simply because it was expressed in a "check-the-box" format. However, the Court does not agree. *See, Thornton v. Colvin*, No. 3:13-CV-1558 CSH, 2016 WL 525994 at *5 (D. Conn. Feb. 9, 2016) ("A physician who checks one box or another is, by that action, expressing a medical opinion.") (*citing Schaal v. Apfel*, 134 F.3d 496, 499 (2d Cir. 1998) for proposition that check-the-box questionnaires are a proper format for a treating physician to express an opinion).

In sum, the ALJ here did not comply with his obligation to provide sufficient good reasons for the weight that he assigned to Blasczak's treating opinion.

### *The Medical Basis for the RFC Determination*

Goble further contends that the ALJ failed to give significant weight to any of the medical opinions, and instead, improperly relied on his own medical judgment in making the RFC determination.  In that regard, the ALJ really only discussed two medical

opinions - Ganesh's and Blasczak's – and did not assign significant weight to either one. (20-21) ("I must give [Ganesh's] assessment limited weight. . . . I must [also] give [Blasczak's] assessment limited weight in consideration of the RFC.").  Goble therefore maintains that the ALJ improperly took raw data from the medical record, such as office notes and test reports, and used it to fashion his own opinion as to what Goble can and cannot do.

The Commissioner responds that "the ALJ based the RFC assessment on his review of the entire record," and that "the RFC is not required to specifically reflect one doctor's opinion."[10]  The Commissioner appears to argue that the RFC determination must be based on medical *evidence*, but not necessarily on competent medical *opinion*. Indeed, at oral argument, the Commissioner's representative argued that the ALJ's RFC determination is sufficient because it is supported by evidence in the record.  The Commissioner's argument on this point implies that the ALJ is free to interpret the medical evidence, such as test results and office notes, for himself.  Alternatively, the Commissioner seems to argue that the ALJ's RFC determination should be upheld as long as the claimant failed to carry her burden of proving her functional limitations.[11]  On this point, at oral argument the Commissioner's representative stated that with regard to lifting, for example, an ALJ could properly find, as part of his RFC determination, that a claimant is capable of lifting twenty pounds, without any medical opinion to support the

---

[10]Def. Memo of Law [#12-1] at pp. 24-25.  While the RFC may not need to "specifically reflect *one* doctor's opinion," the Court believes that the RFC must reflect *some* doctor's opinion, *i.e.*, it must be based upon competent medical opinion, which, as we will see,  this RFC is not.

[11]Def. Memo of Law [#12-1] at p. 24 ("Plaintiff had the burden of demonstrating functional limitations that precluded any substantial gainful activity.").

finding, as long as the claimant produces no evidence that he *cannot* lift twenty pounds.

The Court agrees with Plaintiff on these contested issues, and disagrees with Defendant.  To begin with, and as previously mentioned, it is well settled that "[t]he ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Burgess v. Astrue*, 537 F.3d at at 131.  Moreover, and contrary to what the Commissioner claims here, the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence. See, *Kneeple v. Colvin*, 14-CV-33-JTC, 2015 WL 7431398 at *6 (W.D.N.Y. Nov. 23, 2015) ("Where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567[ (a)-(e) ] ... the Commissioner may not make the connection himself.") (citation and internal quotation marks omitted); *see also, Hazlewood v. Comm'r of Soc. Sec.*, No. 6:12-CV-798, 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) ("The ALJ is not qualified to assess a plaintiff's RFC on the basis of bare medical findings, and where the medical findings in the record merely diagnose a plaintiff's impairments and do not relate those diagnoses to a specific RFC, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (citation and footnote omitted); *Lowe v. Colvin*, No. 6:15-CV-06077 (MAT), 2016 WL 624922, at *7 (W.D.N.Y. Feb. 17, 2016)  ("Because Dr. Sheehan is the only medical opinion in the record to assess Plaintiff's ability to lift and carry with specificity, and because the ALJ ultimately gave

little evidentiary weight to that opinion, the Court is left with the circumstance of the ALJ interpreting raw medical data to arrive at a residual functional capacity determination, without the benefit of an expert medical opinion.  In short, the ALJ's RFC determination that Plaintiff can lift up to 20 pounds is not supported by substantial evidence.") (citations omitted); *Alexander v. Comm'r of Soc. Sec.*, No. 5:14-CV-00039, 2014 WL 7392112, at *8 (D. Vt. Dec. 29, 2014) ("[A]n ALJ is not qualified to analyze raw medical data, and must interpret the medical evidence through the expert opinion of a physician.").

The Court also finds that the Commissioner is mistaken is asserting that where a claimant who has the burden of proof fails to submit evidence of functional limitations, the ALJ may properly make an RFC determination without evidence to support it. Rather, the RFC finding must be supported by substantial evidence. *See, Staggers v. Colvin*, No. 3:14-CV-717 JCH, 2015 WL 4751123, at *4 (D. Conn. Aug. 11, 2015) ("The mere fact that the claimant bears the burden of proof during the first four steps does not mean that the ALJ can find an RFC without substantial evidence to support it.") (*citing Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir.2013)); *see also, Mardukhayev v. Comm'r of Soc. Sec.*, No. 01-CV-1324(JG), 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002) ("Although the claimant has the burden of proving that he no longer has the residual functional capacity to do his past work (step four of the five-step sequential evaluation process), the ALJ's finding on the issue must be supported by substantial evidence.") (citation and internal quotation marks omitted); *Orchanian v. Colvin*, No. 14-CV-05161 FB, 2015 WL 5167879, at *2 (E.D.N.Y. Sept. 4, 2015) ("The Commissioner has the

15

burden to demonstrate that its RFC determination is supported by substantial evidence.") (citation omitted).

In sum, an RFC determination must be supported by a competent medical opinion, and here it is unclear what medical opinion the ALJ relied upon in making the RFC determination, unless he simply formed his own unqualified medical opinion, as Plaintiff maintains.  Consequently, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.

### The ALJ's Credibility Determination

Goble next contends that the ALJ failed to provide sufficient "good reasons" for finding her "not entirely credible."   Goble maintains, for example, that just as the ALJ improperly relied upon his own medical judgment in making the RFC determination, he similarly relied upon his own interpretation of the medical evidence when evaluating her credibility.  For instance, Goble notes that at page (21) of the ALJ's decision, in discussing her credibility he states: "Furthermore, while the claimant may have some positive  findings of lumbar degeneration, these changes are mild in nature, and there is no significant evidence of any considerable protrusions or herniation, nor is there any evidence of any stenosis in the lumbar spine." (21).  According to Goble, "[t]his is a classic example of the impermissible substitution of an ALJ's personal judgment for competent medical opinion."[12]

Goble further maintains that the purported inconsistencies in her testimony upon which the ALJ relied do not amount to substantial evidence.  For example, Goble

---

[12]Pl. Memo of Law [#9-1] at p. 23.

contends that her claim of disability is not undermined simply because she attempted to

earn a nursing degree[13] after being laid off from her last job.  Similarly, Goble contends

that the ALJ improperly cited her desire to provide care for her children.  On this point,

the ALJ stated:

> The claimant also testified that she was seeking the return of her children,
> who had been removed [from the home by] protective services, and
> despite her alleged impairments appeared confident of her ability to
> handle the care of the children.  Indeed the evidence also reflects that the
> claimant recently was taking care of a friend whom had been suffering
> from colitis.  As such, the evidence signifies that the claimant is capable of
> more functional abilities than she has asserted at the hearing.

(22).

The Commissioner responds that the ALJ properly evaluated Goble's credibility.

However, the Court again agrees with Goble that the ALJ erred in assessing her

credibility.  To begin with, the Court agrees that the ALJ based his credibility

determination in part on his own assessment of the medical evidence, rather than on

competent medical opinion.  For example, the ALJ cites no competent medical opinion

to support his view that Goble's lumbar x-rays are necessarily inconsistent with her

allegations of pain. *See, Torres v. Comm'r of Soc. Sec.*, No. 14 CIV. 6712 (BMC), 2015

WL 7281640, at *6 (E.D.N.Y. Nov. 16, 2015) ("The ALJ is free to . . . choose between

conflicting, properly submitted, medical opinions, but he cannot substitute his own

judgment for a competent medical opinion.") (citation omitted).

---

[13]The record appears to contain conflicting evidence concerning whether Goble completed her nursing studies.  A disability report based on information which Goble provided indicates that she completed nursing studies and received an "LPN license," though she never actually worked as a nurse. (261) ("Have not used LPN license since received.").  However, at the hearing, Goble testified that she did not complete her nursing studies and never received an associate's degree. (77).

The Court further finds that the ALJ failed to explain how the other matters he cited demonstrate Goble's lack of credibility.  For instance, the ALJ does not explain how the fact that Goble was laid off from her last job in 2009, or that she subsequently attended a community-college nursing program, indicate that she is exaggerating her symptoms.  Likewise, the ALJ implies that Goble must be exaggerating her symptoms since she believes that she can "care for her children" if they are returned to her by CPS. (22).  However, the ALJ did not explore what type of "care" the children would require.  The ALJ's decision does not even mention the ages of the children.[14] Furthermore, the ALJ suggests that Goble is less disabled than she claims because she had taken "care of a friend whom had been suffering from colitis." (22).  Again, though, the ALJ did not explore the nature of the "care" that Goble provided to the friend, and seems to have merely assumed that it required more functional capability than Goble claims to have.  However, the entire extent of the evidence on this point is the following cryptic entry in a note from an office visit on April 2, 2013:  "Hyperlipidemia is described as the following:  Current treatment includes none (not feeling well, has friend in Hospital with colitis, she was helping her friend.)." (645).

For all of the foregoing reasons, the Court finds that the ALJ's credibility assessment is not supported by substantial evidence.

### The ALJ's Determination at Step Five of the Sequential Analysis

Lastly, Goble contends that the ALJ, after determining that she cannot perform her past relevant work, failed to prove that there are other jobs which she can perform.

---

[14]At the hearing, Goble testified that she has four children, ranging in age from Seventeen to Seven. (78).

Goble maintains that the ALJ's questioning of the VE  was based on an RFC finding which is not supported by substantial evidence, and that the VE's testimony therefore cannot provide substantial evidence to support the step-five determination.  The Commissioner disagrees that the RFC finding was erroneous, but the Court has already resolved that issue against the Commissioner.  Accordingly, for the reasons already discussed above, the ALJ's finding at step five is based on an erroneous RFC determination, and therefore is not supported by substantial evidence.

CONCLUSION

Defendant's cross-motion [#12] for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings [#9] is granted, though her request to have the matter remanded solely for calculation of benefits is denied.[15]  The matter is reversed and remanded to the Commissioner for further administrative proceedings. The Clerk of the Court is directed to enter judgment in Plaintiff's favor and to close this action.

So Ordered.

Dated: Rochester, New York
        June 8, 2016                    ENTER:


                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge

_____

[15]Although Plaintiff's motion includes a demand to have the case remanded solely for calculation of benefits, she has not shown that such relief is appropriate in this case.

19